UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
FOURTH DIVISION

---

Jean Kidd,

    Plaintiff,

v.

Alex Jackson, Chief of the Minneapolis
Fire Department (individually and in his
official capacity), and the City of
Minneapolis,

    Defendants.

Court File No. _____

**COMPLAINT
AND DEMAND FOR A JURY TRIAL**

---

Plaintiff Jean Kidd, through her attorneys, **John A. Klassen, PA**, 700 Lumber Exchange, 10 South Fifth Street, Minneapolis, Minnesota, 55402, and **Muller & Muller, PLLC**, 3109 West 50th Street, No. 362, Minneapolis, Minnesota 55410-2102, for her Complaint against the above-named Defendants, states and alleges as follows:

### NATURE OF CLAIM

1. This is an action to secure relief for violations of rights guaranteed by the United States Constitution under 42 U.S.C. § 1983 ("Section 1983"), 42 U.S.C. § 2000e et seq. ("Title VII"), and the Minnesota Human Rights Act, Minn. Stat. § 363A.01 et seq.

### JURISDICTION AND VENUE

2. Plaintiff brings this action under, and jurisdiction thereof is conferred on this Court by virtue of 28 U.S.C. § 1331, 42 U.S.C. § 2000e et seq. and 42 U.S.C. § 1983.

SCANNED
SEP 30 2010
U.S. DISTRICT COURT MPLS

## PARTIES

3. Plaintiff Jean Kidd ("Plaintiff") is an adult female who now and at all times relevant was a resident of Hennepin County, State of Minnesota, and a citizen of the United States. At all times material herein, Plaintiff was an "employee" of the Minneapolis Fire Department ("MFD") and the City of Minneapolis.

4. Defendant City of Minneapolis ("Defendant Minneapolis") is a Minnesota political subdivision. At all times material herein, Defendant Minneapolis was Plaintiff's "employer." The MFD is a department of such Defendant.

5. Defendant Alex Jackson ("Defendant Jackson") is an adult male who now and at all times relevant was a resident of the state of Minnesota, and an employee of Defendant Minneapolis, including as Plaintiff's superior in his capacity as the Chief of the MFD.

## FACTS

6. In 1986, Plaintiff first commenced employment with Defendant Minneapolis as a firefighter.

7. Plaintiff was one of the first female firefighters hired by Defendant Minneapolis.

8. Since 1986, Plaintiff has satisfactorily performed her job duties. By 1992, she had ascended progressively to her current rank of Captain. She was the first female to hold that rank in the MFD, which is a reflection of her strong performance as a firefighter.

9. In 2007, Plaintiff became, by appointment, the MFD's Deputy Chief of Personnel, serving in its administrative offices. This was a major career-enhancing step for Plaintiff.

10. Also in 2007, Plaintiff's career reached another high point when she was selected as one of three finalists for the vacant position of Chief of the MFD. Ultimately, Defendant Jackson was chosen for the job over Plaintiff and the third finalist.

11. In May 2008, a female firefighter named Kristina Lemon ("Lemon") filed a lawsuit against Defendant Minneapolis alleging unlawful retaliatory treatment and discrimination against her ("Lemon's Lawsuit"). Lemon's Lawsuit stemmed from her prior claims of sexual discrimination and harassment against Defendant Minneapolis and its former Chief of the MFD, Bonnie Bleskachek ("Bleskachek"). In 2008, Lemon claimed that she had been subjected to retaliation as a result of her earlier lawsuit against the MFD and Bleskachek.

12. On January 7, 2009, Plaintiff gave a deposition in Lemon's Lawsuit. In her deposition, Plaintiff testified to the following, without limitation:

    a. She had supported Lemon during her legal struggles with the MFD;

    b. She had witnessed other firefighters, including those of higher ranks, engage in the same sort of conduct as Lemon without being subjected to a fitness-for-duty and psychological exam, while Lemon was forced to undergo these exams;

    c. She believed Lemon to be trustworthy and credible;

    d. That Defendant Jackson had played a direct role in an adverse employment action against Lemon by denying Lemon's workers' compensation claim, which adverse employment action was part of the alleged retaliation against Lemon by the MFD's administration; and

    e. She knew of and had opposed the MFD's history of sexual discrimination against women.

13. Plaintiff viewed her act of providing honest, truthful testimony in Lemon's Lawsuit as part of her responsibility as a citizen. Her participation in Lemon's Lawsuit was conduct bound by the dictates of the court and the rules of evidence and civil procedure, not by her job description and job duties.

14. On or about June 18, 2009, Plaintiff received positive performance review from her superior, Assistant Chief Cherie Penn, for the period January 1, 2009 to June 18, 2009. In this performance review, Plaintiff met or exceeded all of her job expectations. Defendant Jackson did not play a role in this performance review.

15. In 2009, the only job performance issue in Plaintiff's record was an April 6th coaching and development incident, wherein Defendants claimed Plaintiff was insubordinate because she had contacted someone outside of her chain of command in order to use vacation time to deploy to Moorhead, Minnesota to aid in the flood relief effort.

16. On or about the first week of June 2009, Plaintiff was contacted by DRI Consulting, based in St. Paul, Minnesota ("DRI"). DRI's managing partner asked her to participate in a survey and 360-degree feedback of Defendant Jackson's performance and policies as Chief of the MFD. DRI told her that it had asked people throughout Minneapolis to participate and submit survey responses.

17. Participating in DRI's survey was not part of Plaintiff's job description, nor was it part of her job duties.

18. Plaintiff expressed concern that submitting responses to the survey could lead to retaliation against her for articulating her frank and personal views of Defendant Jackson's job performance and policies. DRI told her that this was not a valid fear and that she need not worry about reprisal.

4

19.    Plaintiff believed that she received the request to participate in this survey because she was a private citizen of Defendant Minneapolis. And she viewed her act of responding to the questions in this survey as conduct taken by her in her capacity as a private citizen of Defendant Minneapolis. She further believed that her responses to the survey about Defendant Jackson's performance as Chief of the MFD and his policies were—given the importance of the Defendant Jackson's position to Defendant Minneapolis and its residents—matters of public concern. As a taxpayer and citizen of Defendant Minneapolis, Plaintiff viewed Defendant Jackson's leadership of the MFD and any comments that she made about his leadership of the MFD to be matters of public concern, thus requiring her honest and forthright responses to this survey.

20.    Plaintiff submitted written survey responses to DRI, which responses contained comments in her own words about Defendant Jackson's performance and policies as Chief of the MFD. These responses and comments included the following:

    a.    Leadership: Score 1. Comments: No strategic plan or vision for the future of the department. No long or short term goals. Department members are unaware of his values, vision, or goals for the department.

    b.    Human Resource Development and Management: Score 2. Comments: Doesn't set objectives or assignments for individuals in administration. There is no team. He views people with different points of view as being disrespectful.

    c.    Customer and Partner Focus: Score 2.

    d.    Strategic and Business Planning: Score 1. Comments: Has no business plan – is just reworking old business plan. There are no short term or long term plans for the department. Does not have the skill set to develop his own.

    e.    Information and Financial Analysis: Score 1. Comments: Handled by other departments. Has little interest in how the systems work.

   f. Performance Measures: Score 1. Comments: Not decisive – has no ability to prioritize or recognize if goals are being met since the department has no goals. Reacts to situations – not proactive. Individuals set their own agenda.

21. Each survey question's score's ranking was 1-5, with 1 being the lowest and defined as "Ineffective", and 2 being second lowest and defined as "Somewhat Effective."

22. On or about late June 2009, DRI provided Plaintiff's written comments about Defendant Jackson to Defendant Jackson (allegedly anonymously) along with other persons' survey responses.

23. Because Plaintiff and Defendant Jackson had worked together over the previous two years in the MFD's administration office, he was closely acquainted with Plaintiff's writing style and her use of language.

24. On June 30, 2009, Defendant Jackson unexpectedly and without warning of any kind "unappointed" Plaintiff back to Captain, which was a substantial demotion in terms of rank, pay, and other rights, privileges and conditions of employment.

25. On July 1, 2009, at a staff meeting, Defendant Jackson stated that he removed Plaintiff from her Deputy Chief Position because he "[did] not want anyone in a position where they [were] unhappy or unable to work together to deal with all of the issues that will be facing us in the next couple of years." Prior to July 1, 2009, nobody at Defendant Minneapolis, including Defendant Jackson, had ever communicated to Plaintiff that she was viewed as being unhappy in her position or unable to work with others for the betterment and furtherance of the MFD. In fact, Plaintiff's June 18, 2009 job performance review stated that she worked well with others.

26. On April 26, 2010, within the 300 day limitations period under Title VII and within the 365 day limitations period under the Minnesota Human Rights Act, Plaintiff filed a charge of discrimination/retaliation with the EEOC, which was cross-filed with the MDHR. Defendants received this EEOC charge in early May 2010.

27. Less than one month later, on or about May 25, 2010, Plaintiff learned that Defendants were investigating her for allegedly violating the "Respect in the Workplace Policy." This allegation stemmed from a story Plaintiff told to co-workers about a trip to Las Vegas wherein she was propositioned by a male on a motorcycle.

28. Defendants' investigation and potential discipline of Plaintiff was retaliatory, because males in the department were not subjected to discipline for the same policy violation Defendants alleged Plaintiff to have engaged in. Defendant Jackson, who had knowledge of Plaintiff's EEOC Charge, was the instigator of the retaliatory investigation and potential discipline against Plaintiff.

29. On or about July 21, 2010, Defendant Minneapolis cleared Plaintiff of the charges against her which the Defendants had instigated.

30. Defendant Minneapolis is vicariously liable and liable under the theory of *respondeat superior* for the unlawful conduct perpetrated against Plaintiff because its management and officials participated in the unlawful conduct, and because Defendant Minneapolis's management and officials condoned this unlawful conduct. Further, Defendant Minneapolis did not take prompt or effective remedial action to stop the unlawful conduct. Defendant Minneapolis's managers and officials took adverse employment actions against Plaintiff within the scope of their employment.

31.     As a direct and proximate result of Defendants' unlawful actions, Plaintiff has lost salary, benefits, career opportunities, training opportunities, advancement, promotion, and suffered garden variety embarrassment, humiliation, emotional pain and anguish, and loss of enjoyment of life. Defendants engaged in this conduct against Plaintiff with malice or reckless indifference to her rights.

## COUNT ONE
## DEPRIVATION OF CIVIL RIGHTS UNDER COLOR OF LAW, 42 U.S.C. § 1983

32.     Plaintiff realleges the foregoing paragraphs as though fully set forth herein.

33.     Defendants are persons under 42 U.S.C. § 1983.

34.     Defendant Minneapolis is a political subdivision of the State of Minnesota. Defendant Jackson, as an agent of Defendant Minneapolis, acted under color of state law when he engaged in unlawful conduct against Plaintiff. Defendant Jackson's actions constituted government action. Defendant Jackson acted in both his official and individual capacities in violating Plaintiff's rights.

### Violation of Plaintiff's First Amendment Right to Speak on Matters of Public Concern

35.     Defendant Minneapolis is a public employer and receives monetary funding from public sources.

36.     Plaintiff's testimony in the Lemon lawsuit was done in her capacity as a citizen and involved matters of public concern. Plaintiff's participation in this lawsuit was not part of her job duties or job description.

37.     The substance and content of Plaintiff's testimony in Lemon's Lawsuit were communicated to Defendant Jackson. Plaintiff's testimony in Lemon's Lawsuit motivated Jackson to take retaliatory action against Plaintiff, including removing her from her position as a

8

Deputy Chief and demoting her to Captain. These actions were taken to deprive Plaintiff of her right to freedom of expression secured by the First Amendment.

38. Plaintiff made the statements to DRI about Defendant Jackson's performance as Chief of the MFD in her capacity as a citizen speaking out on matters of public concern. Plaintiff's participation in this survey was not part of her job duties or job description.

39. Plaintiff's statements to DRI were communicated to Defendant Jackson and motivated him to take retaliatory action against Plaintiff, including unappointing her from her Deputy Chief position and demoting her to Captain. Defendant took these actions to deprive Plaintiff of her right to freedom of expression, secured by the First Amendment.

40. Pursuant to the policy, practice, usage and custom of Defendant Minneapolis, and under the color of state law, Defendants established and maintained a work environment which retaliated against Plaintiff for the exercise of free speech.

41. As a result of the unconstitutional actions of Defendants, Plaintiff has been harmed and has lost salary and benefits, has been denied employment opportunities and advancement, and has suffered and will continue to suffer garden variety emotional pain and anguish, and compensatory damages in an amount in excess of $75,000.

## COUNT TWO
## DEPRIVATION OF CIVIL RIGHTS UNDER COLOR OF LAW, 42 U.S.C. § 1983

42. Plaintiff realleges the foregoing paragraphs as though fully set forth herein.

43. Defendants are persons under 42 U.S.C. § 1983.

44. Defendant Minneapolis is a political subdivision of the State of Minnesota. Defendant Jackson, as an agent of Defendant Minneapolis, acted under color of state law when he engaged in unlawful conduct against Plaintiff. Defendant Jackson's actions constituted

government action. Defendant Jackson acted in both his official and individual capacities in violating Plaintiff's rights.

### Violation of Plaintiff's Right to Equal Protection under the Fourteenth Amendment

45. Defendant Minneapolis is a public employer and receives monetary funding from public sources.

46. Plaintiff is an employee of Defendant Minneapolis; therefore, she enjoys rights, privileges and conditions of employment which include being free of retaliation for making a charge of discrimination, testifying, assisting, or participating in a proceeding to enforce rights under state and federal civil rights laws.

47. Defendants subjected Plaintiff to retaliation based upon her participation and testimony in Lemon's Lawsuit.

48. Defendants had no legitimate or rational bases for subjecting Plaintiff to retaliation based upon her participation and testimony in Lemon's Lawsuit.

49. Defendants also subjected Plaintiff to retaliation based upon her participation in filing an EEOC charge on behalf of herself.

50. Defendants had no legitimate or rational bases for subjecting Plaintiff to retaliation based upon her participation in filing an EEOC charge on behalf of herself.

51. The purpose and effect of the unlawful policies and practices of Defendants was to deprive Plaintiff, under color of state law, statute, regulation, custom and usage, the rights, privileges, and immunities secured by the Fourteenth Amendment to the Constitution of the United States providing for Equal Protection for all citizens and all other persons within the jurisdiction of the United States.

52. As a result of the unconstitutional actions of Defendants, Plaintiff has been harmed and has lost salary and benefits, has been denied employment opportunities and advancement, and has suffered and will continue to suffer garden variety emotional pain and anguish, and compensatory damages in an amount in excess of $75,000.

## COUNT THREE
## REPRISAL – MINNESOTA HUMAN RIGHTS ACT

53. Plaintiff realleges the foregoing paragraphs as though fully set forth herein.

54. Defendant Minneapolis' treatment of Plaintiff during her employment constituted reprisal for engaging in protected conduct, within the meaning of Minn. Stat. § 363A.01 et seq., and Defendant Minneapolis' actions, therefore, constituted unfair employment practices against Plaintiff, for which Defendant Minneapolis is liable.

55. As a result of these acts of reprisal, Plaintiff has been harmed and has lost salary and benefits, has been denied employment opportunities and advancement, and has suffered and will continue to suffer garden variety emotional pain and anguish, and compensatory damages in an amount in excess of $75,000.

## COUNT FOUR
## RETALIATION – TITLE VII

56. Plaintiff realleges the foregoing paragraphs as though fully set forth herein.

57. Defendant Minneapolis' treatment of Plaintiff during her employment constituted retaliation for engaging in protected conduct, within the meaning of Title VII, and Defendant Minneapolis' actions, therefore, constitute unfair employment practices against Plaintiff, for which Defendant Minneapolis is liable.

58. As a result of these acts of retaliation, Plaintiff has been harmed and has lost salary and benefits, has been denied employment opportunities and advancement, and has suffered and will continue to suffer garden variety emotional pain and anguish, and compensatory damages in an amount in excess of $75,000.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays:

A. That the practices of Defendants complained of herein be adjudged, decreed and declared to be violative of the rights secured to the Plaintiff by the Constitution of the United States, 42 U.S.C. § 1983, Title VII, and Minnesota Statute § 363A.01 et seq..

B. That a permanent mandatory injunction be issued requiring that Defendants adopt practices in conformity with the requirements of the Constitution of the United States, 42 U.S.C. § 1983, Title VII, and Minnesota Statute § 363A.01 et seq.

C. That a permanent prohibitory injunction be issued prohibiting Defendants from engaging in the practices complained of herein.

D. That Plaintiff is awarded compensatory damages in an amount to be established at trial.

E. For an entry of an Order enjoining Defendants and their officers, agents and employees from subjecting Plaintiff to differential treatment and from any retaliation against Plaintiff for prior actions, or for bringing this action.

F. That the Court retain jurisdiction until such time as the Court is satisfied that the Defendants have remedied the practices complained of herein and are determined to be in full compliance with the law.

G.   That the Court order Defendants to pay counsel for the Plaintiff her reasonable attorneys' fees and the costs and expenses of this action.

H.   That Plaintiff be awarded such other and further legal and equitable relief as may be found appropriate, just and/or equitable, including punitive damages.

### JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues triable of right by a jury.

RESPECTFULLY SUBMITTED,

Date: September 30, 2010

**JOHN A. KLASSEN, PA**

John A. Klassen (No. 24434X)
700 Lumber Exchange Building
10 South Fifth Street
Minneapolis, MN 55402
jaklaw@aol.com
Phone: (612) 204-4533


**MULLER & MULLER, PLLC**

Andrew P. Muller (No. 32467X)
3109 West 50th Street, No. 362
Minneapolis, MN 55410-2102
apmuller@themullerlawfirm.com
Phone: (612) 604-5341

**ATTORNEYS FOR PLAINTIFF**